## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **AYODELE OKE,** | : | |
| **Plaintiff** | : | |
| | : | **No. 3:18-cv-310** |
| **v.** | : | |
| | : | **(Judge Rambo)** |
| **MARK GARMAN,** *et al.*, | : | |
| **Defendants** | : | |

## MEMORANDUM

This matter is before the Court pursuant to the motion for summary judgment filed by Defendants Ted Williams ("Williams"), Dr. Italia ("Italia"), Dr. Trejada ("Trejada"), and Nurse Bob ("Kazlaski").[1]  (Doc. No. 50.)  The motion is fully briefed and ripe for disposition.

## I.    BACKGROUND

*Pro se* Plaintiff Ayodele Oke ("Plaintiff"), who is currently incarcerated at the State Correctional Institution Forest in Marienville, Pennsylvania ("SCI Forest"), initiated the above-captioned action on February 5, 2018 by filing a complaint pursuant to 42 U.S.C. § 1983 against Defendants Mark Garman ("Garman"), Deputy McMahon ("McMahon"), Deputy Houser ("Houser"), Major Haldeman ("Haldeman"), Williams, Italia, Trejada, Captain Probst ("Probst"), Lt. Hoover

---

[1] Plaintiff initially named "Nurse Bob" as a Defendant in this matter.  Defendants' filings have identified this individual as Robert Kazlaski.  The Court, therefore, will refer to this Defendant by his last name.

("Hoover"), Lt. Vance ("Vance"), Nurse Ficks ("Ficks"), Kazlaski, and three (3) John/Jane Doe individuals. (Doc. No. 1.)  Plaintiff alleges that while incarcerated at SCI Rockview, he was denied emergency medical care for a "wisdom tooth which contained a cavity and was cracked."  (*Id.* ¶ 2.)  The Court sets forth the following summary of Plaintiff's complaint as it pertains to his claims against Defendants Williams, Italia, Trejada, and Kazlaski.

In February of 2016, while housed in the Restrictive Housing Unit ("RHU"), Plaintiff "developed excruciating pain" in his mouth from a cavity.  (*Id.* ¶¶ 20-21.) Plaintiff "could not eat or drink at times; he could not sleep at times (insomnia); he developed severe migraines and headaches; and he developed constant and severe pain in his neck, mouth, and jaw."  (*Id.* ¶ 21.)  On February 28, 2016, Plaintiff submitted a request slip to dental staff, asking for emergency care because of "severe toothaches" and "constant and excruciating pain."  (*Id.* ¶ 22.)  On March 3, 2016, dental staff responded and told Plaintiff that he was scheduled to be seen in March. (*Id.* ¶ 23.)  On March 19, 2016, Plaintiff submitted another request, asking to be seen immediately.  (*Id.* ¶ 24.)  Plaintiff was never seen by dental staff in March.  (*Id.* ¶ 25.)

On April 3, 2016, Plaintiff submitted a grievance regarding his dental issues and the fact that he had not yet been seen by dental staff.  (*Id.* ¶ 27.)  The grievance

was assigned to Defendant Williams on April 7, 2016. (*Id.*)  On April 7, 2016, Plaintiff had a conversation with Defendant Kazlaski as he was delivering medication to inmates in the RHU. (*Id.* ¶¶ 28-29.)  Plaintiff told Defendant Kazlaski that he "was in constant pain due to a severe toothache" and that he had not yet been seen by dental despite his two (2) requests. (*Id.* ¶ 30.)  Defendant Kazlaski told Plaintiff "that dentistry is really 'backed up.'" (*Id.* ¶ 31.)  Plaintiff avers that Defendant Kazlaski stated that Plaintiff still should have received care and that "a request slip sent to dental asking for emergency services is equivalent to putting in a sick-call slip." (*Id.*)  Plaintiff had another conversation with Defendant Kazlaski on April 8, 2016, during which Defendant Kazlaski told Plaintiff that he hoped dental would seek him soon. (*Id.* ¶¶ 32-34.)

On April 17, 2016, Plaintiff submitted another grievance regarding his dental issues. (*Id.* ¶ 35.)  Plaintiff, however, never received a response. (*Id.*)  He wrote to Defendant Williams asking if the grievance had been received. (*Id.*)  Plaintiff never received a response to his inquiry from Defendant Williams. (*Id.*)

On April 18, 2016, Plaintiff was complaining to C.O Ceprish and his neighbor, Wayne Johnson, about his tooth pain. (*Id.* ¶ 36.)  Johnson told C.O. Ceprish that Plaintiff "needed immediate medical attention." (*Id.*)  C.O. Ceprish called dental and stated that Plaintiff was in serious need of medical care due to

3

excruciating toothaches." (*Id.* ¶ 37.)  Later that day, C.O. Cain and another officer escorted Plaintiff to dental for treatment.  (*Id.* ¶ 38.)  Plaintiff showed Defendant Italia his wisdom tooth, "which was rotten, contained a big black hole, and a cavity." (*Id.* ¶ 39.)  Plaintiff told Defendant Italia that he was in "excruciating pain."  (*Id.* ¶ 40.)  Defendant Italia told Plaintiff that the tooth had to be immediately extracted and proceeded to do so.  (*Id.* ¶¶ 41-42.)  Defendant Italia showed Plaintiff the cracked wisdom tooth and told him that "he could probably feel the crack when he chewed because the wisdom tooth was cracked."  (*Id.* ¶¶ 43-44.)  Plaintiff told Defendant Italia that he had been in severe pain, and Defendant Italia responded, "I'm sure you were."  (*Id.* ¶¶ 45-46.)  Plaintiff was given Motrin for pain.  (*Id.* ¶ 47.)

On April 20, 2016, Defendant Williams denied Plaintiff's first grievance.  (*Id.* ¶ 61.)  He noted that Plaintiff was scheduled to be seen on March 28, 2016, but that security staff were unable to escort him to the appointment.  (*Id.*)  He also stated that Plaintiff's "dental issues were not an emergency situation requiring an immediate exam."  (*Id.*)  Plaintiff filed two more grievances on April 21 and 25, 2016.  (*Id.* ¶¶ 62, 66.)  He ultimately exhausted his administrative remedies.  (*Id.* ¶¶ 63-94.) Based on the foregoing, Plaintiff alleges that Defendants Williams, Trejada, Italia, and Kazlaski violated his Eighth Amendment rights by demonstrating deliberate indifference to his medical needs.  He also raises state law claims of negligence,

negligent infliction of emotional distress, and intentional infliction of emotional distress.  As relief, Plaintiff seeks compensatory and punitive damages.

Defendants Garman, Haldeman, Hoover, Houser, Italia, McMahon, Probst, Trejada, Vance, Williams, Kazlaski, and Ficks subsequently filed motions to dismiss Plaintiff's complaint.  (Doc. Nos. 19, 23.)  In Reports and Recommendations dated February 22 and 25, 2019, Magistrate Judge Carlson recommended granting the motions with respect to Plaintiff's claims against Defendants Ficks, Garman, McMahon, Haldeman, Houser, Probst, Vance, and Hoover, and denying the motions with respect to Plaintiff's claims against Defendants Williams, Kazlaski, Italia, and Trejada.   (Doc. Nos. 28, 29.)   Plaintiff did not object to the Reports and Recommendations.  Accordingly, on March 20, 2019, the Court adopted the Reports and Recommendations and granted Plaintiff leave to file an amended complaint with respect to his claims against all Defendants.  (Doc. No. 30.)  The Court advised Plaintiff that failure to file a timely amended complaint would be construed as his election to proceed on the remaining claims only.  (*Id.*)

Plaintiff did not file an amended complaint.  On May 15, 2019, Defendants Kazlaski, Italia, Trejada, and Williams filed their answer.  (Doc. No. 31.)  The parties subsequently engaged in discovery.  At the close of discovery, Defendants filed the instant motion for summary judgment.  (Doc. No. 50.)  After receiving an extension

of time (Doc. Nos. 53, 54), Plaintiff filed his response on May 5, 2020 (Doc. Nos. 55, 56).  Defendants filed their reply on May 19, 2020.  (Doc. No. 58.)  In an Order dated May 22, 2020, the Court directed Plaintiff to provide, within thirty (30) days, identifying information for the John/Jane Doe Defendants.  (Doc. No. 59.)  The Court advised Plaintiff that failure to do so would result in their dismissal pursuant to Rule 4(m) of the Federal Rules of Civil Procedure.  (*Id.*)  Plaintiff, however, did not respond to the Court's Order.  Accordingly, in an Order dated July 1, 2020, the Court dismissed the John/Jane Doe Defendants without prejudice pursuant to Rule 4(m).  (Doc. No. 60.)

## II.    STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) requires the court to render summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[T]his standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

A disputed fact is "material" if proof of its existence or nonexistence would affect the outcome of the case under applicable substantive law.  *Id.* at 248; *Gray v.*

6

*York Newspapers, Inc.*, 957 F.2d 1070, 1078 (3d Cir. 1992).  An issue of material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Anderson*, 477 U.S. at 257; *Brenner v. Local 514, United Bhd. of Carpenters and Joiners of Am.*, 927 F.2d 1283, 1287-88 (3d Cir. 1991).

When determining whether there is a genuine issue of material fact, the court must view the facts and all reasonable inferences in favor of the nonmoving party. *Moore v. Tartler*, 986 F.2d 682 (3d Cir. 1993); *Clement v. Consol. Rail Corp.*, 963 F.2d 599, 600 (3d Cir. 1992); *White v. Westinghouse Electric Co.*, 862 F.2d 56, 59 (3d Cir. 1988).  To avoid summary judgment, however, the nonmoving party may not rest on the unsubstantiated allegations of his or her pleadings.  When the party seeking summary judgment satisfies its burden under Rule 56 of identifying evidence which demonstrates the absence of a genuine issue of material fact, the nonmoving party is required by Rule 56 to go beyond his pleadings with affidavits, depositions, answers to interrogatories or the like in order to demonstrate specific material facts which give rise to a genuine issue.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986).  The party opposing the motion "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986).  When Rule 56 shifts the burden of production to the nonmoving party, that party must produce evidence to

show the existence of every element essential to its case which it bears the burden of proving at trial, for "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. *See Harter v. G.A.F. Corp.*, 967 F.2d 846, 851 (3d Cir. 1992).

In determining whether an issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party. *White*, 826 F.2d at 59. In doing so, the Court must accept the nonmovant's allegations as true and resolve any conflicts in his favor. *Id.* (citations omitted). However, a party opposing a summary judgment motion must comply with Local Rule 56.1, which specifically directs the oppositional party to submit a "statement of the material facts, responding to the numbered paragraphs set forth in the statement required [to be filed by the movant], as to which it is contended that there exists a genuine issue to be tried"; if the nonmovant fails to do so, "[a]ll material facts set forth in the statement required to be served by the moving party will be deemed to be admitted." L.R. 56.1. A party cannot evade these litigation responsibilities in this regard simply by citing the fact that he is a *pro se* litigant. These rules apply with equal force to all parties. *See Sanders v. Beard*, No. 09-CV-1384, 2010 WL 2853261, at *5 (M.D. Pa. July 20, 2010) (*pro se* parties "are not excused from complying with court orders

8

and the local rules of court"); *Thomas v. Norris*, No. 02-CV-01854, 2006 WL 2590488, at *4 (M.D. Pa. Sept. 8, 2006) (*pro se* parties must follow the Federal Rules of Civil Procedure).

## III.   STATEMENT OF MATERIAL FACTS[2]

Defendants Italia and Tejada are dentists at SCI Rockview.  (Doc. No. 52 ¶ 1.)  Defendant Kazlaski is a nurse at SCI Rockview.  (*Id.* ¶ 3.)  Defendant Williams

---

[2] The Local Rules of Court provide that in addition to filing a brief in opposition to the moving party's brief in support of its motion, "[t]he papers opposing a motion for summary judgment shall include a separate, short and concise statement of material facts responding to the numbered paragraphs set forth in the statement [of material facts filed by the moving party] . . . as to which it is contended that there exists a genuine issue to be tried."  M.D. Pa. L.R. 56. 1.  The Rule further requires the inclusion of references to the parts of the record that support the statements.  *Id.* Finally, the Rule states that the statement of material facts required to be served by the moving party will be deemed to be admitted unless controverted by the statement required to be served by the opposing party.  *See id.*

Plaintiff has complied with Local Rule 56.1 because he has filed a response to Defendants' statement of facts.  (Doc. No. 56.)  Plaintiff's response, however, contains an additional twelve (12) paragraphs that do not respond to any numbered paragraphs in Defendants' statement of material facts (Doc. No. 52).  Because of this, Defendants ask that the Court strike these additional statements.  (Doc. No. 58 at 2-3.)  These additional statements are "neither contemplated nor permitted by the Local Rules."  *See Godfrey v. S. York Cty. Sch. Dist.*, No. 1:17-cv-2335, 2019 WL 2419665, at * (M.D. Pa. June 10, 2019) (quotation omitted).  Accordingly, the Court will strike paragraphs 24-35 of Plaintiff's response and only consider his direct responses to Defendants' statement of material facts.  *See id.* (concluding same).  Moreover, Plaintiff's verified complaint may be treated as an affidavit in opposition to Defendants' motion for summary judgment.  *See Ziegler v. Eby*, 77 F. App'x 117, 120 (3d Cir. 2003) (noting that "the complaint was not verified, thereby precluding the District Court from treating it as the equivalent of an affidavit for purposes of Federal Rule of Civil Procedure 56(e)"); *Reese v. Sparks*, 760 F.2d 64, 67 (3d Cir. 1985) (treating verified complaint as an affidavit on summary judgment motion); *see also Boomer v. Lewis*, No. 06-850, 2009 WL 2900778, at *2 n.4 (M.D. Pa. Sept. 9, 2009) ("A verified complaint may be treated as an affidavit in support of or in opposition to a motion for summary judgment if the allegations are specific and based on personal knowledge.").  Accordingly, the Court sets forth the undisputed facts above with footnotes setting forth the parties' relevant factual disputes.

is the Clinical Health Care Administrator ("CHCA") at SCI Rockview.  (*Id.* ¶ 2.)
The Department of Corrections' Dental Sick Call Program "was not intended to
circumvent the scheduling process of the dental office."[3]  (*Id.* ¶ 4.)  The Dental Sick
Call Program was "established to address urgent and emergency care, including
treatment for, among other things, cessation of hemorrhage, relief of severe pain,
infections, fractures, or trauma."  (*Id.* ¶ 5.)  Plaintiff maintains "that the severe pain
caused him to be unable to eat or drink at times; he couldn't sleep at times; and that
his neck, mouth, and jaw were in excruciating pain."  (*Id.* ¶ 6.)  Despite his pain,
Plaintiff "continued to order items like Ritz crackers, graham crackers, toasted
pastries, and beef and cheese sticks from the commissary."[4]  (*Id.* ¶ 7.)

Generally, "all inmate requests and grievances are reviewed and delegated to
the appropriate personnel to answer.  This would include a triage of the request, a
chart review, and the availability of scheduling."  (*Id.* ¶ 8.)  Inmates also may use
the medical sick call process, which allows them to be seen by medical on the next

---

[3] Plaintiff admits that the Dental Sick Call Program was not designed to circumvent the scheduling
process but avers that it was "not intended to take priority over the normal scheduling process of
the dental office when dental emergencies . . . occur.  The Dental Sick-Call program was designed
to prioritize dental emergencies over all other dental issues/conditions."  (Doc. No. 56 ¶ 4.)

[4] Plaintiff admits that he ordered certain commissary items while housed in the RHU.  (*Id.* ¶ 7.)
He denies Defendants' statement "to the extent that any reasonable inference could be inferred that
just because Plaintiff ordered food that somehow his tooth was not causing him severe pain (or
that his condition did not require emergency medical care/treatment)."  (*Id.*)  Plaintiff avers that
he would order certain items for other inmates in the RHU and that he "would sometimes chew
his food on the opposite side of his mouth and not on the side that contained the cavity."  (*Id.*)

business day.  (*Id.*)  On March 19, 2016, Plaintiff submitted a request slip to dental staff asking when his appointment would be scheduled because "[his] teeth were hurting badly."  (*Id.* ¶ 9.)  Plaintiff "never described his pain as severe or listed any pain he was having to his neck, mouth, or jaw, or identified that he couldn't eat or drink."[5]  (*Id.* ¶ 10.)  Dental staff responded that Plaintiff was scheduled to be seen in March; "however, come early April, [Plaintiff] was not yet seen by dentistry."  (*Id.* ¶ 11.)  Dental requests "may be reviewed and responded to by dentists or the task can be delegated to other staff, including the hygienist or to medical."[6]  (*Id.* ¶ 12.)  It is unclear which staff member responded to Plaintiff's March 19, 2016 request.  (*Id.* ¶ 13.)

On April 7 and 8, 2016, Plaintiff spoke to Defendant Kazlaski while he was distributing medication to other inmates.  (*Id.* ¶ 14.)  "These two conversations are the only events that took place between [Plaintiff] and Kazlaski."[7]  (*Id.* ¶ 15.)  Plaintiff was ultimately seen by Defendant Italia on April 18, 2016, and his wisdom

[5] Plaintiff maintains that he did indicate that his teeth were "hurting badly" in this request slip.  (*Id.* ¶ 10.)  He avers further that in a request slip submitted to dental staff on February 28, 2016, he stated that he "was in severe, constant, and excruciating pain due to a toothache."  (*Id.*)

[6] Plaintiff denies Defendants' statement to the extent it infers that dentists "are not responsible for and/or required to review inmate request slips (because they can just delegate that authority) when an inmate is requesting medical attention from dental personnel due to an emergency."  (*Id.* ¶ 12.)

[7] Plaintiff admits that these are the only two conversations he had with Kazlaski but denies "any inference that [he] did not inform Kazlaski that he was in need of serious medical attention due to, among other things, a toothache."  (*Id.* ¶ 15.)

11

tooth was removed.[8]   (*Id.* ¶ 16.)   No infection was present when the tooth was removed.   (*Id.* ¶ 17.)   At no time was Defendant Trejada "aware that [Plaintiff] was requesting assistance from dental nor was he [Plaintiff's] treating dentist."[9]   (*Id.* ¶ 18.)

Plaintiff filed his first grievance regarding his dental issues on April 3, 2016. (*Id.* ¶ 19.)   The grievance was assigned number 620728.   (*Id.*)   He filed two additional grievances, numbers 623889 and 653893, which were received on May 2, 2016.  (*Id.* ¶ 21.)  His three grievances were denied because Plaintiff "was assessed to not have an urgent need to see dental."[10]   (*Id.* ¶ 22.)   As CHCA, Defendant Williams was assigned to respond to Plaintiff's grievances.  (*Id.* ¶ 23.)

---

[8] Defendants' statement of material facts states that the wisdom tooth was removed on April 18, 2018.  (Doc. No. 52 ¶ 16.)  2018, however, appears to be a typographical error, as various exhibits submitted in the above-captioned case indicate that Plaintiff's wisdom tooth was removed in 2016.

[9] Plaintiff avers that Defendants Italia and Trejada were the only two (2) dentists employed at SCI Rockview during the relevant time. (Doc. No. 56 ¶ 18.)  He maintains that Defendant Italia "stated that he did not review the Plaintiff's request slips to dental seeking emergency medical attention; therefore, that leaves Defendant Dr. Trejada as the only other dentist who could possibly have reviewed the Plaintiff's complaints to dental."  (*Id.*)  Plaintiff argues further that because Defendant Trejada failed to respond to his requests for admission within thirty (30) days, they are deemed to be admitted.  (*Id.*)  The Court considers Plaintiff's argument *infra.*

[10] Plaintiff admits that all three (3) grievances were denied.  (*Id.* ¶ 22.)  He avers, however, that his dental condition was an emergency.  (*Id.*)  He also maintains that because he did not have to pay a co-pay, SCI Rockview staff determined that his situation was an emergency.  (*Id.*)

## IV.   DISCUSSION

### A.   Eighth Amendment Claims

Plaintiff first avers that Defendants Italia, Trejada, Kazlaski, and Williams violated his Eighth Amendment rights by demonstrating deliberate indifference to his dental needs.  Specifically, he maintains that they were aware of his need for emergency dental treatment but refused to provide it.  In support of their motion for summary judgment, Defendants assert that Defendants Trejada, Kazlaski, and Williams are entitled to summary judgment because they were not personally involved in the alleged violations of Plaintiff's constitutional rights.  (Doc. No. 51 at 7-8; Doc. No. 58 at 6-10.)  They maintain further that they were not deliberately indifferent to Plaintiff's needs and, alternatively, that they are entitled to qualified immunity.  (Doc. No. 51 at 9-14.)  The Court considers their arguments below.

### 1.   Merits of Plaintiff's Eighth Amendment Claims

In the context of medical care, the Eighth Amendment "requires prison officials to provide basic medical treatment to those whom it has incarcerated." *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999).  To establish an Eighth Amendment deliberate indifference claim, a claimant must demonstrate "(i) a serious medical need, and (ii) acts or omissions by prison officials that indicate

deliberate indifference to that need." *Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 582 (3d Cir. 2003).

Deliberate indifference has been found "where the prison official (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment based on a non-medical reason; or (3) prevents a prisoner from receiving needed or recommended medical treatment." *Rouse*, 182 F.3d at 197. The "deliberate indifference" prong of the Eighth Amendment test requires that the defendant actually know of and disregard "an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Circumstantial evidence can establish subjective knowledge if it shows that the excessive risk was so obvious that the official must have known about it. *See Beers-Capitol v. Whetzel*, 256 F.3d 120, 133 (3d Cir. 2001) (citing *Farmer*, 511 U.S. at 842)). Moreover, "[i]f a prisoner is under the care of medical experts . . . a non-medical prison official will generally be justified in believing that the prisoner is in capable hands." *Spruill v. Gillis*, 372 F.3d 218, 236 (3d Cir. 2004). Accordingly, "absent a reason to believe (or actual knowledge) that prison doctors or their assistants are mistreating (or not treating) a prisoner, a non-medical prison official . . . will not be chargeable with the Eighth Amendment scienter requirement of deliberate indifference." *Id.* Finally, "whether or not a defendant's conduct amounts

14

to 'deliberate indifference has been described as a classic issue for the fact finder.'" *Young v. Kazmerski*, 266 F. App'x 191, 193 (3d Cir. 2008) (quoting *Armstrong v. Squadrito*, 152 F.3d 564, 567 (7th Cir. 1998)).

The second prong of the Eighth Amendment inquiry is whether the plaintiff's medical needs were serious.  A serious medical need is "one that has been diagnosed by a physician as requiring treatment or one that is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  *Monmouth Cty. Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).  Not every condition is a serious medical need; instead, the serous medical need element contemplates a condition of urgency, namely, one that may produce death, degeneration, or extreme pain.  *See id.*  Moreover, because only egregious acts or omissions can violate this standard, mere medical malpractice cannot result in an Eighth Amendment violation. *See White v. Napoleon*, 897 F.2d 103, 108-10 (3d Cir. 1990); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("medical malpractice does not become a constitutional violation merely because the victim is a prisoner").

Additionally, prison medical authorities are given considerable latitude in the diagnosis and treatment of inmate patients, *see Young v. Kazmerski*, 266 F. App'x 191, 194 (3d Cir. 2008), and a doctor's disagreement with the professional judgment of another doctor is not actionable under the Eighth Amendment.  *See White*, 897

15

F.2d at 108-10.  Furthermore, it is well settled that an inmate's dissatisfaction with a course of medical treatment, standing alone, does not give rise to a viable Eighth Amendment claim.  *See Taylor v. Norris*, 36 F. App'x 228, 229 (8th Cir. 2002); *Abdul-Wadood v. Nathan*, 91 F.3d 1023, 1024-25 (7th Cir. 1996); *Sherrer v. Stephens*, 50 F.3d 496, 497 (8th Cir. 1994); *Brown v. Borough of Chambersburg*, 903 F.2d 274, 278 (3d Cir. 1990) ("[A]s long as a physician exercises professional judgment his behavior will not violate a prisoner's constitutional rights."); *see also Pearson v. Prison Health Servs.*, 850 F.3d 526, 535 (3d Cir. 2017) ("[W]hen medical care is provided, we presume that the treatment of a prisoner is proper absent evidence that it violates professional standards of care.").

"Dental care is one of the most important medical needs of inmates."  *Hunt v. Dental Dep't*, 865 F.2d 198, 200 (9th Cir 1989) (quoting *Ramos v. Lamm*, 639 F.2d 559, 576 (10th Cir. 1980)).  The "objective component [of an Eighth Amendment claim] is satisfied where a prisoner alleges unnecessary pain associated with delay in receiving medical care."  *See Bowlds v. Turn Key Health*, No. CIV-19-726-SLP, 2020 WL 730876, at *3 (W.D. Okla. Feb. 13, 2020) (citations omitted).  Defendants maintain that "[i]t may have taken approximately six weeks for [Plaintiff] to see a dentist; however[,] that is not . . . unreasonable, cruel, or unusual."  (Doc. No. 51 at 13.)  The Court, notes, however, that "[a] three-week delay in dental care, coupled

16

with knowledge of the inmate-patient's suffering, can support a finding of an Eighth Amendment violation under section 1983." *Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995); *see also Fields v. Gander*, 73 F.2d 1313, 1315 (8th Cir. 1984) (concluding that plaintiff's claim that prison officials knew of his pain from an infected tooth but refused to provide dental care for up to three weeks could support a finding of an Eighth Amendment violation).

The current record before the Court reflects that during the relevant time, Defendants Italia and Trejada were the only two (2) licensed facility dentists employed at SCI Rockview. (Doc. No. 51-2 at 5; Doc. No. 51-4 at 6; Doc. No. 51-6 at 6.) The record further reflects that DOC Policy 13.2.1, Access to Health Care, sets forth procedures for reviewing inmate request slips for emergency dental care. Under that policy, "[t]he licensed facility dentist shall make the determination as to whether a presenting dental problem is an emergency or not." (Doc. No. 51-1 at 19.) Emergency care includes, *inter alia*, treatment for "relief of severe pain." (*Id.*) Furthermore, upon receipt of an inmate request slip, it is appropriate for a licensed facility dentist to review the slip "to determine if the problem described rises to the appropriate level or urgency." (*Id.* at 22.) Review of a request slip may be delegated to dental hygienists or other medical providers in the absence of a dentist on site. (Doc. No. 51-4 at 5.)

17

The record further reflects that on or about February 28, 2016, Plaintiff submitted a request slip asking for dental care for "severe toothaches" and "constant and excruciating pain." (Doc. No. 1 ¶ 22.)  Dental responded, stating that Plaintiff was scheduled to be seen in March of 2016. (*Id.* ¶ 23.)[11]  Plaintiff submitted another request slip on March 19, 2016, asking when his appointment was scheduled because his teeth were "hurting badly." (Doc. No. 52 ¶ 9.)  Defendant Williams reviewed the incoming request slip and forwarded it to dental for response. (Doc. No. 51-4 at 8.)  Dental responded that his appointment was scheduled in March. (Doc. No. 52 ¶ 11.)  It is unclear who from dental responded to Plaintiff's request slips. (*Id.* ¶ 13; Doc. No. 1 ¶ 23.)  As of early April 2016, Plaintiff still had not yet been seen by dental. (*Id.* ¶ 11.)  Nothing in the record before the Court explains why Plaintiff was not taken to his scheduled appointment in March.  Nor is there any evidence that Plaintiff's appointment was affirmatively rescheduled.

The record also reflects that Plaintiff's April 3, 2016 grievance was assigned to Defendant Williams for response. (Doc. No. 56-8 at 2 at 4-5.)  In that grievance, Plaintiff indicated that he was supposed to have been seen by dental in March but that he still had not been seen. (*Id.* at 4.)  Plaintiff maintained that he was suffering

---

[11] The parties have not submitted a copy of Plaintiff's February 28, 2016 request slip.  As noted *supra*, however, Plaintiff's verified complaint is the equivalent of an affidavit for purposes of opposing summary judgment. *Reese*, 760 F.2d at 67.

from severe toothaches, could not chew on the right side of his mouth, experienced pain when drinking, and had pain in his right jaw. (*Id.*) Plaintiff indicated that his pain caused him headaches and that he had been in pain for over a month. (*Id.* at 5.) On April 7 and 8, 2016, Plaintiff spoke with Defendant Kazlaski about his issues while Defendant Kazlaski was distributing medication to other inmates in the RHU. (Doc. No. 52 ¶ 14.) Plaintiff was eventually seen by dental on April 18, 2016, when Defendant Italia removed his cracked wisdom tooth. (*Id.* ¶ 16; Doc. No. 1 ¶¶ 43-44.)

Defendants Trejada, Kazlaski, and Williams assert that they are entitled to summary judgment because they were not personally involved in the alleged violations of Plaintiff's constitutional rights. Under § 1983, individual liability may be imposed only if the state actor played an "affirmative part" in the alleged misconduct. *Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)). The Court, therefore, considers Plaintiff's claims against each Defendant pursuant to the standard set forth above.

### a.    Defendant Williams

As the CHCA at SCI Rockview, Defendant Williams was assigned to respond to Plaintiff's grievances. (Doc. No. 52 ¶¶ 2, 23.) Defendant Williams contends that he cannot be held liable because of his role in reviewing Plaintiff's grievances. (Doc.

No. 51 at 8; Doc. No. 58 at 6-7.)  Generally, the filing of a grievance, participation in "after-the-fact" review of a grievance, or dissatisfaction with the response to an inmate's grievance, does not establish the involvement of officials and administrators in any underlying constitutional deprivation. *See Pressley v. Beard*, 266 F. App'x 216, 218 (3d Cir. 2008) ("The District Court properly dismissed these defendants and any additional defendants who were sued based on their failure to take corrective action when grievances or investigations were referred to them."). Several courts within the Third Circuit, however, have concluded that supervisory officials may be held liable stemming from the review of a grievance alleging an ongoing violation because the official "is personally involved in that violation because he is confronted with a situation he can remedy directly." *Mayo v. Oppman*, No. CV 17-311, 2018 WL 1833348, at *4 (W.D. Pa. Jan. 23, 2018), *Report and Recommendation adopted*, 2018 WL 943528 (W.D. Pa. Feb. 20, 2018); *Talley v. Wetzel*, No. 2:18-cv-230, 2018 WL 6198364, at *2-3 (W.D. Pa. Nov. 28, 2018) (concluding that the inmate plaintiff had stated plausible supervisory liability claims because he submitted grievances for each day he was subjected to the challenged conditions); *Gibbs v. Univ. Corr. Healthcare*, No. CV 14-7138 (MAS) (LHG), 2016 WL 6595916, at *2 (D.N.J. Nov. 7, 2016); *Whitehead v. Rozum*, No. 11-102, 2012 WL 4378193, at *2 (W.D. Pa. Aug. 7, 2012).

20

The Third Circuit has concluded that CHCAs are "administrators, [and] not doctors." *Thomas v. Dragovich*, 142 F. App'x 33, 39 (3d Cir. 2005). Therefore, for Defendant Williams to be liable for violating Plaintiff's Eighth Amendment rights, Plaintiff must demonstrate that Defendant Williams possessed actual knowledge or a reason to believe that "prison doctors or their assistants [were] mistreating (or not treating)" him. *Spruill*, 372 F.3d at 236. In the instant case, the record reflects that Defendant Williams received Plaintiff's March 19, 2016 request slip, reviewed it, and forwarded it to dental staff for a response. (Doc. No. 51-4 at 6.) In that request slip, Plaintiff indicated that he had sent a previous request to dental on February 28, 2016 because his teeth were "hurting badly" and was told that he would be seen in March. (Doc. No. 56-8 at 2.) In the March 1, 2016 request, Plaintiff asked again when he would be seen. (*Id.*)

In light of the evidence presented by the parties, it is the Court's view that there are genuine issues of material facts regarding whether Defendant Williams was personally involved in the alleged violations of Plaintiff's Eighth Amendment rights. The evidence before the Court could permit a reasonable juror to conclude that Defendant Williams possessed actual knowledge or a reason to believe that "prison doctors or their assistants [were] mistreating (or not treating)" him. *Spruill*, 372 F.3d at 236. Such issues of fact will likely turn on a credibility assessment, a task in

21

which this Court may not partake at the summary judgment stage. *See Anderson*, 477 U.S. at 252. Accordingly, the Court will not grant summary judgment to Defendant Williams on the basis that he lacked personal involvement in the alleged violations.

### b.    Defendant Kazlaski

Defendant Kazlaski asserts that he is entitled to summary judgment because Plaintiff has failed to present facts showing that he "had the requisite knowledge that dental staff was failing to address [Plaintiff's] cavity." (Doc. No. 58 at 8.) In his verified complaint, Plaintiff avers that on April 7, 2016, Defendant Kazlaski was delivering medication to the inmates in the RHU. (Doc. No. 1 ¶ 28.) Plaintiff stopped Defendant Kazlaski and told him that he was "in constant pain due to a severe toothache" and that he had written two (2) request slips to dental. (*Id.* ¶¶ 29-30.) Plaintiff told Defendant Kazlaski that "dental stated—both times—that they would see him . . . in March; however, dental did not fulfill this obligation." (*Id.* ¶ 30.) Plaintiff maintains that Defendant Kazlaski told him that dental was "backed up" but that he still should have been seen. (*Id.* ¶ 31.) Plaintiff had a similar conversation with Defendant Kazlaski on April 8, 2016. (*Id.* ¶¶ 32-34.) Plaintiff has submitted a declaration stating the same under the penalty of perjury. (Doc. No. 56-2 at 2-3.)

Defendant Kazlaski argues that Plaintiff never "described his pain in such a manner as to require emergency care" and that they "even discussed that [Plaintiff] had a routine appointment scheduled." (Doc. No. 51 at 11.)  He maintains that as far as he knew, "dental had scheduled an appointment to see [Plaintiff] and deference was given to those professionals to properly assess the situation." (*Id.*)  In his responses to Plaintiff's requests for admission, Defendant Kazlaski stated that Plaintiff "did not ask for emergency care from [him]." (Doc. No. 51-5 at 3.)  In his responses to Plaintiff's interrogatories, however, Defendant Kazlaski noted that he had "an obligation to make sure an inmate receives emergency medical treatment if [he is] notified by an inmate that he is in severe pain due to a toothache." (Doc. No. 56-4 at 48.)  He avers, however, that he "was not notified by this inmate about his tooth." (*Id.*)

In light of the evidence presented by the parties, it is the Court's view that there are genuine issues of material fact regarding whether Defendant Kazlaski was deliberately indifferent to Plaintiff's need for dental care.  Defendants' assertion that Defendant Kazlaski knew that Plaintiff had an upcoming appointment to see the dental department misreads Plaintiff's complaint.  Plaintiff avers that his conversations with Defendant Kazlaski occurred on April 7 and 8, 2016, after he was supposed to have been seen in March, and that he told Defendant Kazlaski that

he was supposed to have been seen in March but that his appointment did not happen. Plaintiff's averments could permit a reasonable juror to conclude that Defendant Kazlaski possessed actual knowledge or a reason to believe that "prison doctors or their assistants [were] mistreating (or not treating)" him.  *Spruill*, 372 F.3d at 236. Such issues of fact will likely turn on a credibility assessment, a task in which this Court may not partake at the summary judgment stage.  *See Anderson*, 477 U.S. at 252.   Accordingly, the Court will not grant summary judgment to Defendant Kazlaski on the basis that he lacked personal involvement in the alleged violations.

### c.    Defendants Italia and Trejada

In support of summary judgment, Defendants Italia and Trejada maintain that they "were not deliberately indifferent to [Plaintiff's] needs because they responded reasonably to the information they received."  (Doc. No. 51 at 12.)  They assert that "[a] routine appointment was scheduled and when [Defendant] Italia learned that [Plaintiff] was in more severe pain [than] was initially known, [Defendant] Italia saw [Plaintiff] that same day."  (*Id.*)  Defendant Trejada maintains further that he had no personal involvement in the alleged violation because "[a]t no point in time relevant to this complaint was [he] aware that Plaintiff was requesting assistance from dental nor was he [Plaintiff's] treating dentist."  (*Id.* at 8; Doc. No. 8-9.)

24

In light of the evidence presented by the parties, it is the Court's view that there are genuine issues of material fact regarding whether Defendants Italia and Trejada were deliberately indifferent to Plaintiff's dental needs and whether Defendant Trejada was personally involved in the alleged violation.  The record before the Court reflects that during the relevant time, Defendants Italia and Trejada were the only two (2) licensed facility dentists employed at SCI Rockview.  (Doc. No. 51-2 at 5; Doc. No. 51-4 at 6; Doc. No. 51-6 at 6.)  Inmates may receive emergency care for "relief of severe pain," and DOC policy provides that "[t]he licensed facility dentist shall make the determination as to whether a presenting dental problem is an emergency or not."  (Doc. No. 51-1 at 19.)  Upon receipt of an inmate's request slip for dental care, the licensed facility dentist should review it "to determine if the problem described rises to the appropriate level or urgency."  (*Id.* at 22.)  Such review may be delegated to dental hygienists or other providers in the absence of a dentist on site.  (Doc. No. 51-4 at 5.)

Plaintiff submitted two (2) request slips, one in February of 2016 and the other in March of 2016, asking for dental care for "severe toothaches," "constant and excruciating pain," and teeth that were "hurting badly."  (Doc. No. 1 ¶¶ 22-23; Doc. No. 52 ¶ 9.)  However, it is unclear who from the dental department at SCI Rockview responded to his request slips.  (*Id.* ¶ 13; Doc. No. 1 ¶ 23.)  Moreover, as of early

April 2016, Plaintiff still had not yet been seen by dental even though his March 2016 appointment had been cancelled. (Doc. No. 52 ¶ 11; Doc. No. 1 ¶ 11.) Nothing in the record explains why Plaintiff was taken to his scheduled appointment in March. Moreover, there is no evidence before the Court suggesting that his appointment was affirmatively rescheduled after it was cancelled.

As such, the record before the Court could permit a reasonable juror to conclude that Defendants Italia and Trejada knew of Plaintiff's need for emergency dental care but refused to provide it in a reasonable period of time. *See Rouse*, 182 F.3d at 197. Such issues of fact will likely turn on a credibility assessment, a task in which this Court may not partake at the summary judgment stage. *See Anderson*, 477 U.S. at 252. Accordingly, the Court will not grant summary judgment to Defendants Italia and Trejada on the basis that they were not deliberately indifferent to Plaintiff's dental needs and on the basis that Defendant Trejada lacked personal involvement in the alleged violation.[12]

---

[12] In his brief in opposition, Plaintiff argues that his requests for admission posed to Defendant Trejada are deemed admitted because Defendant Trejada did not "timely serve written answers and/or objections" to them. (Doc. No. 55-1 at 7-8.) Under Rule 36 of the Federal Rules of Civil Procedure, matters are deemed admitted unless "within 30 days after being served, the party to whom the request is directed served on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney." Fed. R. Civ. P. 36(a)(3). "A shorter or longer time for responding may be stipulated to under Rule 29 or be ordered by the [C]ourt." *Id.* Here, the record reflects that Defendant Trejada acknowledged receipt of Plaintiff's requests for admission on August 16, 2019, requested an extension of time to respond on September 9, 2019, and provided responses to September 19, 2019, thirty-three (33) days after they were served upon him. (Doc. No. 58-1 at 2-6.) The Court agrees with Defendant Trejada that "the short delay in

## 2.    Qualified Immunity

As noted *supra*, Defendants alternatively assert that they are entitled to qualified immunity from Plaintiff's Eighth Amendment claims.  (Doc. No. 51 at 13-14.)  "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).  To determine whether a right was clearly established, the Court must ask "whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted."  *See Schmidt v. Creedon*, 639 F.3d 587, 598 (3d Cir. 2011).  "If it would not have been clear to a reasonable officer what the law required under the facts alleged, then he is entitled to qualified immunity."  *Id.*  Stated differently, for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate."  *See al-Kidd*, 563 U.S. at 741.  As the Supreme Court recently noted, "[t]his demanding standard protects 'all but the plainly incompetent or those who knowingly violate the law.'"  *See District of Columbia v. Wesby*, 138 S. Ct. 577, 589

---

responding to all of [Plaintiff's] discovery requests in no way deems them admitted for the purposes of summary judgment."  (Doc. No. 58 at 9.)  In any event, as discussed *infra*, genuine issues of material fact preclude the entry of summary judgment to Defendants Italia and Trejada on Plaintiff's Eighth Amendment claim.

27

(2018) (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).  Accordingly, "there must be sufficient precedent at the time of action, factually similar to the plaintiff's allegations, to put [the] defendant on notice that his or her conduct is constitutionally prohibited." *See Mammaro v. N.J. Div. of Child Prot. & Permanency*, 814 F.3d 164, 169 (3d Cir. 2016) (quoting *McLaughlin v. Watson*, 271 F.3d 566, 572 (3d Cir. 2001)).

The United States Supreme Court's decision in *White v. Pauly*, 137 S. Ct. 548 (2017), clarifies the Court's inquiry in this regard.  In that case, the Supreme Court reaffirmed that its case law "do[es] not require a case directly on point" for a right to be clearly established, but "existing precedent must have placed the statutory or constitutional question beyond debate."[13]  *See id.* at 551 (internal quotation marks omitted) (quoting *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015)).  The Supreme Court reiterated that the clearly-established law "must be 'particularized' to the facts of the case," and cautioned that the fact that a case presents a unique set of facts and circumstances is an "important indication" that a defendant's conduct at issue did not violate a "clearly established" right.  *See id.* at 552 (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)).

---

[13] There may be the rare "obvious case," however, where "a body of case law" is not necessary. *See Brosseau v. Haugen*, 543 U.S. 194, 199 (2004).

28

Defendants maintain that "[i]t may have taken approximately six weeks for [Plaintiff] to see a dentist; however[,] that is not either unreasonable, cruel, or unusual." (Doc. No. 51 at 13.)  They assert that "a delay in dental care of upwards of three months has been deemed by courts to be reasonable in these circumstances" and that "existing precedent does not establish a violation of [Plaintiff's] Eighth Amendment rights." (*Id.* at 14.)  However, as noted above, "[a] three-week delay in dental care, coupled with knowledge of the inmate-patient's suffering, can support a finding of an Eighth Amendment violation under section 1983." *Boyd*, 47 F.3d at 969; *see also Fields*, 73 F.2d at 1315 (concluding that plaintiff's claim that prison officials knew of his pain from an infected tooth but refused to provide dental care for up to three weeks could support a finding of an Eighth Amendment violation). At this time, this precedent and the genuine issues of material fact set forth above preclude the Court from concluding that a six (6)-week delay in dental care did not violate Plaintiff's Eighth Amendment rights.  The Court, therefore, concludes that Defendants are not entitled to qualified immunity.

### B.    State Law Claims

As noted *supra*, Plaintiff also asserts claims of negligence, intentional infliction of emotional distress, and negligent infliction of emotional distress under Pennsylvania state law against Defendants Williams, Trejada, Italia, and Kazlaski.

Defendants' sole argument in support of summary judgment with respect to these claims is that the Court should decline to exercise supplemental jurisdiction over them. (Doc. No. 51 at 14-15.) "It is well established that in an action with both federal and state claims, 'if the federal claims are dismissed before trial, even though not insubstantial in a jurisdictional sense, the state claims should be dismissed as well.'" *Chernavsky v. Twp. of Holmdel Police Dep't*, 136 F. App'x 507, 511 (3d Cir. 2005) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). As discussed above, however, genuine issues of material fact preclude the Court from granting summary judgment to Defendants with respect to Plaintiff's Eighth Amendment claims. Accordingly, the Court will deny the motion for summary judgment with respect to Plaintiff's state law claims and continue to exercise supplemental jurisdiction over them.

## V. CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment (Doc. No. 50) will be denied. An appropriate Order follows.

s/ Sylvia H. Rambo
United States District Judge

Date: July 8, 2020